# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

AURELIO DUARTE, WYNJEAN DUARTE, §
INDIVIDUALLY AND AS NEXT FRIEND §
OF S.D., A MINOR, AND BRANDI DUARTE §
§
v. § CASE NO. 4:12-CV-169
§ (Judge Mazzant/Judge Nowak)
THE CITY OF LEWISVILLE, TEXAS §

## MEMORANDUM ADOPTING REPORT AND
## RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

Came on for consideration the report and recommendation of the United States Magistrate Judge in this action, this matter having been heretofore referred to the Magistrate Judge pursuant to 28 U.S.C. § 636. On August 21, 2015, the report of the Magistrate Judge was entered containing proposed findings of fact and recommendations that Defendant's Motion for Summary Judgment (Dkts. #70-75) be granted, and Plaintiffs' claims be dismissed with prejudice. Having received the report and recommendation of the Magistrate Judge (Dkt. #91), having considered Plaintiff's timely filed objections (Dkt. #94), and having conducted a de novo review, the Court is of the opinion that the findings and conclusions of the Magistrate Judge are correct and hereby adopts the Magistrate Judge's report (Dkt. #91) as the findings and conclusions of the Court.

## BACKGROUND

The facts in this case originate from a child sex offender residency restriction ordinance (the "Ordinance"), enacted by Defendant City of Lewisville, Texas (the "City"), its application to Plaintiff Aurelio Duarte ("A. Duarte") and, by extension, its effects on A. Duarte's wife, Wynjean Duarte ("W. Duarte"), and children ("S.D." and "B.D."). The facts are set out in detail by the Magistrate Judge, and need not be repeated herein (*see* Dkt. #91). In summary, A. Duarte

is a convicted child sex offender and is required to register with the Texas Department of Public Safety's Sex Offender Database (the "Database") because of his conviction involving a minor; thus, Plaintiff is prohibited by the City's Ordinance from residing in the City "within 1,500 feet of any premises where children commonly gather," subject to a number of affirmative defenses (Dkt. #70, Exs. 1, 3; Dkt. #1 at 3, ¶ A). Plaintiffs' Complaint is comprised of two sets of claims: (1) claims asserted by Plaintiff A. Duarte himself, and (2) claims asserted by W. Duarte, S.D., and B.D. (the "Duarte Family") (Dkt. #1 at 7, 9, 10). Plaintiffs assert that the imposition of a child predator buffer zone, or a restriction on where persons required to register on the Database because of convictions regarding a minor, may live in relation to "premises where children commonly gather," is a violation of the rights afforded them by and/or through the United States Constitution. *Id.*

The procedural posture of this case is lengthy, and is fully recited by the Magistrate Judge (Dkt. #91 at 9-10). The Court will describe only those procedural events related to the instant motion and occurring since the Magistrate Judge's report and recommendation was entered. On June 5, 2015, the City filed its Motion for Summary Judgment and Brief in Support (Dkt. #70-75) seeking summary judgment on all claims. On July 7, 2015, Plaintiffs filed their response (Dkt. #84), and on July 17, 2015, the City filed its reply (Dkt. #89). On August 21, 2015, after a thorough analysis of Plaintiffs' claims and the parties' summary judgment arguments, the Magistrate Judge entered a report and recommendation finding Plaintiffs' claims should be dismissed with prejudice in their entirety (Dkt. #91). Specifically, the Magistrate Judge recommended Plaintiff A. Duarte's claims for violations of (1) the Ex Post Facto Clause of Article 1, Section 10 of the United States Constitution; (2) the Double Jeopardy Clause of the Fifth Amendment; (3) the Equal Protection Clause of the Fourteenth Amendment; (4) his civil

rights under 42 U.S.C. § 1983; and (5) the Due Process Clause of the Fourteenth Amendment be dismissed with prejudice. *Id.* The Magistrate Judge further recommended that the Duarte Family's procedural due process claim be dismissed with prejudice, and that all Plaintiffs' claims for declaratory and injunctive relief be dismissed with prejudice. *Id.*

On September 4, 2015, Plaintiffs timely filed their Written Objections to Magistrate's Findings, Conclusions, Report and Recommendation on Defendant's Motion for Summary Judgment (Dkt. #94). Plaintiffs make essentially two objections to the report and recommendation of the Magistrate Judge: (1) A. Duarte objects to the Magistrate Judge's finding that the Ordinance does not deprive him of equal protection in violation of the Fourteenth Amendment; and (2) all Plaintiffs argue that they have been deprived of procedural due process under the Fourteenth Amendment by application and enforcement of the Ordinance, and that they hold a "liberty interest" in residing together with immediate family within the areas of the City that are prohibited by the Ordinance (Dkt. #91 at 34; Dkt. #94 at 2-3). Notably, Plaintiff specifically states in his objections, "A. Duarte confines his objections, in this response to the Magistrate's report, to the claims stated above, denial of procedural Due Process and Equal Protection, and hereby abandons all other claims" (Dkt. #94 at 3). Accordingly, the report and recommendation of the Magistrate Judge is hereby adopted regarding A. Duarte's claims for violations of the Ex Post Facto Clause, the Double Jeopardy Clause, and his civil rights under 42 U.S.C. § 1983, and the Court finds these claims should be dismissed with prejudice. The Court will now consider Plaintiffs' objections related to the equal protection and procedural due process claims in turn.

*I.*     ***Equal Protection***

A. Duarte asserts that the Ordinance deprives him of his constitutional right to Equal Protection of Law in violation of the Fourteenth Amendment to the United States Constitution (Dkt. #1 at 12; Dkt. #91 at 29). A. Duarte asserts that the Ordinance places persons into two classes, both of which involve persons who are required to register as child sex offenders under Texas law (Dkt. #84 at 16; Dkt. #91 at 30). The first class of individuals (which includes A. Duarte) is comprised of child sex offenders who are not on community supervision and are subject to the residency restrictions in the Ordinance. *Id.* The second class encompasses sex offenders who at the time the Ordinance went into effect were on community supervision and were judicially relieved from compliance with the one-thousand (1,000) foot residency restriction otherwise required as a condition of their supervision under Section 13B of Article 42.12 of the Texas Code of Criminal Procedure (which will be discussed in greater detail *infra*). *Id.* Individuals in the second class are not required to comply with the residency restrictions under one of the six (6) affirmative defenses available in the Ordinance (Dkt. #70, Ex. 1 at 4-5; Dkt. #91 at 30). A. Duarte argues that the imposition of the residency restriction on him, but not the second class of sex offenders, deprives him of equal protection (Dkt. #84 at 16; Dkt. #91 at 30).

The Magistrate Judge first analyzed whether the Ordinance involves a suspect class or a fundamental right in order to determine which judicial scrutiny test is appropriate to use, and found that sex offenders and/or persons included on the Texas sex offender registry are not a suspect class (Dkt. #91 at 30-31 (citing *Stauffer v. Gearhart*, 741 F.3d 574, 587 (5th Cir. 2014))). The Magistrate Judge further found that, although A. Duarte argued that he has a fundamental right to live where he wishes and that the Ordinance constitutes a direct regulation on family

affairs and/or his right to associate, no fundamental right is implicated by the Ordinance. *Id.* at 31-34. Accordingly, the Magistrate Judge applied the rational basis test stating that "the Ordinance will be upheld as long as it is rationally related to a legitimate government purpose." (Dkt. #91 at 34 (citing *Hines v. Alldredge*, 783 F.3d 197, 202-03 (5th Cir. 2015)). The Magistrate Judge found that there is a conceivable set of facts that provides a rational basis for the imposition of the Ordinance, and recommended that A. Duarte's equal protection claim be dismissed. *Id.*

### A. The Magistrate Judge Properly Applied the Rational Basis Test

A. Duarte does not object to the Magistrate Judge's finding that the Ordinance should be analyzed using the "more deferential" rational basis test (Dk. #94 at 13). Accordingly, the Court focuses on A. Duarte's argument that the Magistrate Judge failed to properly analyze - under the test set forth in *Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 441 (1985) - whether "A. Duarte (Class [1]) has a 'distinguishing characteristic,' in relation to those exempted by the [Ordinance] (Class [2]), that is 'relevant to interests the State has the authority to implement'" (Dkt. #94 at 13).[1] A. Duarte also contends that the City must demonstrate that the different and greater burden imposed on A. Duarte by application of the Ordinance (in relation to the second class of individuals who are not so burdened) constitutes a "rational means to serve a legitimate end." *Id.* A. Duarte argues that the Magistrate Judge's failure to apply these tests constitutes error.

---

[1] In *Cleburne*, the United States Supreme Court considered whether an ordinance, which required a home for the intellectually disabled to acquire a special use permit prior to leasing a building for the operation of the facility, violated the Equal Protection Clause. 473 U.S. at 435-6. The lower court, the Fifth Circuit, previously found that intellectual disability was a quasi-suspect classification and that it should assess the validity of the ordinance using intermediate-level scrutiny. *Id.* at 436. However, the Supreme Court found that classification as intellectually disabled did not merit heightened scrutiny, and applied the rational basis test to determine that the ordinance, "rest[s] on an irrational prejudice against the [intellectually disabled]," and violated the Equal Protection Clause. *Id.* at 449-50.

As an initial matter, the "test" advocated by A. Duarte is not the test described by the Supreme Court in *Cleburne*, and the quotes and citations from *Cleburne* are somewhat taken out of context.[2]  The Supreme Court held in *Cleburne* that the Equal Protection Clause mandates "all persons similarly situated should be treated alike," and that "[t]he general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *Id*. at 439-40.  The Supreme Court explained that the general rule gives way when a statute classifies individuals by race, alienage, or national origin (which are then subjected to strict scrutiny), or gender (which are then subjected to heightened scrutiny).  *Id*. at 440.  Finding none of those classifications present in *Cleburne*, the Supreme Court considered whether the ordinance was "rationally related to a legitimate governmental purpose." *Id*. at 446.  The Supreme Court stated that the state "may not rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational," and emphasized "some objections – such as 'a bare… desire to harm a politically unpopular group,' are not legitimate state interests." *Id*. at 446-47 (internal citations and quotations omitted).

This is the proper test; the Magistrate Judge undertook such an analysis here.  The Magistrate Judge first determined whether any fundamental rights or suspect classifications were implicated by the Ordinance.  Finding none, the Magistrate Judge assessed whether the

---

[2] A. Duarte's proposed "test" comes from a portion of *Cleburne* in which the Supreme Court discussed the application of heightened review to differential treatment based on age and cited its decision in *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 313 (1976), explaining:

> The lesson of *Murgia* is that where individuals in the group affected by a law have distinguishing characteristics relevant to interests the State has the authority to implement, the courts have been very reluctant… to closely scrutinize legislative choices as to whether, how, and to what extent those interests should be pursued.  In such cases, the Equal Protection Clause requires a rational means to serve a legitimate end.

*Cleburne*, 473 U.S. at 441-42.  Here, the individuals affected by the Ordinance have the "distinguishing characteristic" of being convicted child sex offenders, and there is no need to identify a second characteristic that distinguishes A. Duarte in relation to other child sex offenders.  Accordingly, the legal "test" advocated by A. Duarte does not apply to his equal protection claim.

Ordinance was "rationally related to a legitimate government purpose" (*See* Dkt. #91 at 34). "As

long as there is a *conceivable* rational basis for the official action, it is immaterial that it was not

*the* or *a* primary factor in reaching a decision or that it was not actually relied upon by the

decision makers or that some other nonsuspect irrational factors may have been considered."

*Reid v. Rolling Fork PUD*, 854 F.2d 751, 754 (5th Cir. 1988) (emphasis in original). The

Magistrate Judge concluded that A. Duarte failed to demonstrate that there is no conceivable

basis for the official action taken by the Ordinance, and further found that the Ordinance

rationally advanced the government's interest in protecting children from the risk of recidivism

among child sex offenders (Dkt. #91 at 24-25, 34). This Court agrees. Federal courts have

consistently found that legislatures have a clear, compelling interest in protecting children from

recidivist sex offenders, and there is a rational connection between prohibiting convicted child

sex offenders from living within 1,500 feet of places where children commonly gather and the

nonpunitive goal of protecting children from recidivist sex offenders.[3] Further, "[w]here there is

such a rational connection to a non-punitive purpose, it is not for the courts to second-guess the

state legislature's policy decision as to which measures best effectuate that purpose." *Doe v.

Bredesen*, 507 F.3d 998, 1006 (6th Cir. 2007). The Court finds the Magistrate Judge applied the

proper test in considering A. Duarte's equal protection claim.

### B. *The Ordinance Itself Does Not Classify Child Sex Offenders*

A. Duarte's argument that the Ordinance further divides sex offenders into two

classifications is false. The Ordinance requires all convicted child sex offenders who must

---

[3]*See, e.g., Graham v. Henry*, No. 06CV381, 2006 WL 2645130, at *9 (N.D. Okla. Sept. 14, 2006) (where the court denied plaintiff's request to enjoin enforcement of a statute that prohibited sex offenders from living within 2,000 feet of a school premises, quoting the Oklahoma legislature that "sex offenders who commit other predatory acts against children and persons who prey on others as a result of mental illness pose a high risk of re-offending after release from custody."); *Smith v. Doe*, 538 U.S. 84, 90 (2003); *Doe v. Bredesen*, 507 F.3d 998, 1006 (6th Cir. 2007) (finding a rational relation due to "the unusually high risk of recidivism" among child sex offenders).

register on the Database to comply with the 1,500 residency restriction; however, the Ordinance offers an affirmative defense for those child sex offenders who are currently on community supervision and the imposition of the required 1,000 foot restriction from places where children commonly gather has either been reduced or waived by the state court. *See* TEX. CODE OF CRIM. P., Art. 42.12, Sec. 13B. Notably, the waiver of this restriction must be raised and determined before the trial court presiding over the community supervision.[4] *Id.* Thus, the Ordinance itself does not create a distinction or classification between child sex offenders; rather, the trial court proceedings and circumstances surrounding a defendant's community supervision control whether a defendant is eligible for the Ordinance's affirmative defense. In light of the aforementioned, A. Duarte's objection to the legal reasoning and conclusions of the Magistrate Judge related to his equal protection claim is overruled.

### C. The Magistrate Judge Correctly Found No Disparate Treatment

In addition, A. Duarte objects that the Magistrate Judge concluded there is no disparate treatment regarding the application of the Ordinance because the affirmative defense available to the first class of registrants does not depend on "individualized findings of dangerousness." (Dkt. #94 at 14). A. Duarte states that the availability of the affirmative defense "clear[ly]" depends on judicial findings that a "child safety zone" is not "necessary to protect the public, given the nature and circumstances of the offense" (Dkt. #94 at 14). As previously enumerated (*see* n.4), there are a variety of scenarios in which the 1,000 foot "child safety zone" can be waived or modified by a state court, and only one of those involves a court making a

---

[4] The reduction or waiver of the 1,000 foot restriction may be raised in various ways, for example: (1) a judge is not required to impose this condition if the defendant is a student at a primary or secondary school or if a defendant is required to reside at a particular residence or facility as a condition of community supervision; (2) a defendant may request that the child safety zone be modified because it creates an undue hardship for the defendant, or is broader than necessary to protect the public, given the nature and circumstances of the offense; and (3) a community supervision officer may permit a defendant to enter on an event-by-event basis into the child safety zone in certain circumstances. *See* TEX. CODE OF CRIM. P., Art. 42.12, Sec. 13B.

determination that the "child safety zone" is not necessary to protect the public under the particular circumstances of the offense. Plaintiff's objection to the conclusion of the Magistrate Judge that the Ordinance's affirmative defenses do not require "individualized findings of dangerousness" is overruled.

### D. The Magistrate Judge Did Not Rely on A. Duarte's "Moderate" Risk Level

A. Duarte further objects that the Magistrate Judge erroneously relied on the Texas Department of Criminal Justice's assignment of a "moderate" risk level to A. Duarte when recommending that A. Duarte's equal protection claim be dismissed (Dkt. #94 at 14). Contrary to A. Duarte's assertion, the Magistrate Judge did not rely on A. Duarte's risk level in its equal protection analysis, and Plaintiff's objection is overruled.

## II. Procedural Due Process (A. Duarte)

As set forth in his summary judgment response brief, A. Duarte's procedural due process argument is that the Due Process Clause entitles him to notice and a hearing prior to the imposition of the Ordinance because he has been fully discharged from his sentence for conviction of a sex offense, he is neither on community supervision or parole, and he was deprived of the right to show that he, as an individual, is not dangerous to the community (Dkt. #84 at 26-27; Dkt. #91 at 36). As noted by the Magistrate Judge, A. Duarte asserted only a procedural due process claim (expressly disclaiming a substantive claim), and postured that such claim could be resolved by determining whether he has a fundamental right to live where he wishes to live (Dkt. #91 at 36).

The Magistrate Judge found that "to the extent that A. Duarte's argument is that the application of the Ordinance to him deprives him of a fundamental right – the right to live where he wishes to live – without notice and a hearing, this argument fails" (Dkt. #91 at 37). The

Magistrate Judge found that there is no such fundamental right, and the Court agrees (Dkt. #91 at

31-32).  The Magistrate Judge explained:

> [O]ver thirty years ago, the Eighth Circuit said "we cannot agree that the right to
> choose one's place of residence is necessarily a fundamental right.  Cases too
> numerous to mention have upheld restrictions on this interest." *Prostrollo v. Univ.
> of S.D.*, 507 F.2d 775, 781 (8th Cir. 1974) (citations omitted).  There is no basis to
> conclude that this law has changed in the intervening years.  *Miller*, 405 F.3d at
> 713-14.   Indeed, in recent years, courts have repeatedly rejected Plaintiffs'
> contention that there is a fundamental, constitutional right to "reside in a certain
> place, i.e., with family members," saying "courts have determined there is no
> fundamental right to live where one pleases." *Graham*, 2006 WL 2645130, at *7.
> By way of example, in *People v. Leroy*, an Illinois appellate court determined that
> a probationer had no fundamental constitutional right to live with his mother
> when she lived within 500 feet of a restricted area. 828 N.E.2d 769, 776 (Ill. App.
> Ct. – 2005). In *Spangler v. Collins*, a federal court in Ohio determined that a
> residency restriction of 1,000 feet did not implicate a fundamental right and
> therefore the statute was entitled to rational basis review.  No. 2:11-cv-00605,
> 2012 WL 1340366, at *5 (S.D. Ohio Apr. 16, 2012).  Further, in *Miller*, the
> Eighth Circuit considered and specifically rejected the argument that A. Duarte
> makes in this case that the Constitution establishes a fundamental right to reside at
> a location of your choosing.  405 F.3d at 714.  As a result the court found that
> strict scrutiny should not apply, and that the residency statute would only be a
> violation if it was not rationally related to a legitimate government purpose.  *Id*.
> Likewise, this Court concludes that the right to reside in a location of one's
> choosing is not a fundamental right.

*Id*. at 32.  The Magistrate Judge continued to find that the Ordinance applies to all child sex

offenders required to register on the Database, and that the affirmative defenses do not allow

individualized findings of dangerousness.  *Id*. at 38.  The Magistrate Judge concluded, finding

that A. Duarte was not entitled to notice and a hearing to prove a fact that is not relevant to the

Ordinance – specifically, that he is not a danger to the community.  *Id*.

### A.  Inapplicability of the Mathews Test

In his objections, A. Duarte modifies his contention and now argues that the Magistrate

Judge must apply a three-factor test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), to

determine "what process he is due;" not whether he has a fundamental right that was implicated

by the Ordinance (Dkt. #94 at 4).  The test that must be applied (according to A. Duarte) requires

the Court to identify:

> (1) the private interest that will be effected by the official action;
>
> (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and
>
> (3) the government's interest, including the function involved and the fiscal and administrative burdens, that the additional or substitute procedural requirement would entail.

(Dkt. #94 at 5 (citing *Mathews*, 424 U.S. at 335)).

After a review of the case law cited by the Parties, and also the recent Supreme Court

decision, *Kerry v. Din*, -- U.S. --, 135 S. Ct. 2128 (2015), the Court finds that the three-factor test

cited by A. Duarte is inapplicable to the present case and need not be considered by this Court in

its ruling.  The Due Process Clause "provides that '[n]o person shall be… deprived of life,

liberty, or property, without due process of law.'"  *Id*. at 2132.  "Although the amount and

quality of process that [the Supreme Court's] precedents have recognized as 'due' under the

Clause has changed considerably since the founding, [] it remains the case that *no* process is due

if one is not deprived of 'life, liberty, or property."  *Id*. (internal citations omitted) (emphasis in

original).  Thus, the first question that the Court must ask is whether the Ordinance deprives A.

Duarte of any of these interests.  *Id*.

There can be no legitimate argument (and none has been made) that A. Duarte has been

deprived of a life or property interest as these rights are described both historically and in case

law precedent.  *Id*. at 2133.  And it is precisely this fact that makes the Supreme Court's decision

and its three-factor test in *Mathews*, which is relied on heavily by A. Duarte, inapplicable to the

present decision before the Court. 424 U.S. at 333-34.[5] However, it is heavily disputed whether A. Duarte has been deprived of a "liberty interest."

The Magistrate Judge determined that A. Duarte has not been deprived of a fundamental right or liberty interest, including an interest in residing wherever he wishes (Dkt. #91 at 31-32). A. Duarte now asserts (and claims he has always asserted) the infringement of a much narrower and more specific "liberty interest;" i.e., the "right, fundamental or otherwise, to reside as a family in areas of the City of Lewisville that are protected under the [Ordinance]." *Id*. at 7.

The Magistrate Judge found that neither A. Duarte (nor any other Plaintiff) has such a liberty interest (*See* Dkt. #91 at 32 and *supra* at p. 10). The Magistrate Judge's conclusion is well supported as courts have repeatedly rejected Plaintiffs' contention that there is a right to choose one's place of residence, a right to reside in a certain place, and/or a right to reside with family members. *Id*. This conclusion is further buttressed by the Supreme Court's recent holding in *Din*. 135 S. Ct. at 2133-34. Therein, the Supreme Court was asked to consider whether the denial of Din's husband's visa application without notice and a hearing was a violation of due process. *Id*. The Supreme Court found that "[b]ecause extending constitutional protection to an asserted right or liberty interest… place[s] the matter outside the arena of public debate and legislative action, and because the guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended, [t]he doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field." *Id*. at 2134 (internal

---

[5] In *Mathews*, the Supreme Court addressed whether the Due Process Clause required, prior to the termination of Social Security disability benefit payments, that the recipient be afforded an opportunity for an evidentiary hearing. *Id*. at 323. The Supreme Court opened its discussion by noting it was undisputed in *Mathews* that "the interest of an individual in continued receipt of these benefits is a statutorily created 'property' interest protected by the Fifth Amendment." *Id*. at 333. The Supreme Court went on to state that its precedent "consistently has held that some form of hearing is required before an individual is finally deprived of a property interest." *Id*. (citations omitted). Thus, the only remaining question for the Supreme Court was "what process is due" prior to the deprivation of the property interest. *Id*. The Supreme Court went on to apply the abovementioned three-factor test before concluding that an evidentiary hearing was not required, and the administrative procedures in question comported with the requirements of due process. *Id*. at 349.

quotations and citations omitted). "Before conferring constitutional status upon a previously unrecognized 'liberty,'" for which A. Duarte has not asked, argued, and/or offered case law in support, the Supreme Court requires "a careful description of the asserted fundamental liberty interest, as well as a demonstration that the interest is objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if [it was] sacrificed." *Id.* (internal quotations and citations omitted). A. Duarte offers no evidence or analysis that his asserted "liberty interest" - residing as a family in the City in areas in which he is prohibited from living by the Ordinance - is a liberty interest that is "objectively, deeply rooted" in our history or so implicit in our concept of liberty, "such that neither liberty nor justice would exist if [it was] sacrificed." *Id.* The Ordinance may, indeed, deprive A. Duarte of "something 'important,' but if that is the criteria for… [] procedural due process, we are in for quite a ride." *Id.* at 2138. Such a liberty interest does not exist, and Plaintiff's objection on this ground is overruled.[6]

### B. The Magistrate Judge Did Not Consider the Number of Available Properties

A. Duarte also objects to the Magistrate Judge's reliance on the number of available residential properties Plaintiffs could have leased or purchased outside the Ordinance's buffer zone (Dkt. #94 at 6). A. Duarte contends that the Magistrate Judge ignored the real legal question which is whether A. Duarte holds a "liberty interest" to reside as a family in the areas of the City that are protected. *Id.* The Court has already answered that question in the negative.

---

[6] Accordingly, even if the Court were to apply the three-factor test from *Mathews*, Plaintiff's argument would still fail. 424 U.S. at 333-34. Factor one requires the Court to ascertain the nature of the private interest that will be affected by the action, which the Court has already determined is not a liberty interest afforded constitutional protection. *Id.* Factor two requires to Court to consider the risk of an erroneous deprivation of the interest through the procedures used. *Id.* The Court finds that the risk is low, considering that there is no liberty interest at stake of which Plaintiff could be deprived. Factor three requires the Court to look at the government's interest that additional safeguards or procedural requirements would entail. *Id.* The Court has no information regarding this factor to look at, but, in any event, this factor is irrelevant given the lack of a protected liberty interest. Plaintiff's objection is overruled.

Moreover, the Magistrate Judge did not consider these available properties in finding that A. Duarte was not entitled to due process (*see* Dkt. #91 at 36-38). Plaintiff's objection to the Magistrate Judge's consideration of the number of available properties is overruled.

### C. The Magistrate Judge Applied the Correct Law

A. Duarte also objects to the Magistrate Judge's reliance on "decisional law that involves the scope of liberty enjoyed by confined prisoners, parolees and persons on community supervision" (Dkt. #94 at 7). Plaintiff contends that he has fully discharged his criminal sentence, is no longer confined or on community supervision, and is entitled to the full scope of liberty enjoyed by others similarly situated. *Id*. This statement is not entirely accurate, as A. Duarte is still a convicted felon, and, as noted by the Magistrate Judge, "convicted felons are properly subjected to many restrictions on their constitutional rights which would be objectionable if imposed on non-felons." (Dkt. #91 at 38 n.25 (citing *Jones v. Helms*, 452 U.S. 412, 420-22 (1981); *Doe v. Petro*, No. 1:05-cv-125, 2005 WL 1038846, at *1 (S.D. Ohio Oct. 24, 2006)). However, the Court has determined A. Duarte's asserted liberty interest is not one that is entitled to constitutional protection for A. Duarte or anyone similarly situated.

A. Duarte further asserts that the Magistrate Judge ignored the difference between sex offender "registration" statutes and sex offender "residency" statutes, and thus, ignored the greater intrusion that the residency restriction imposes on A. Duarte (Dkt. #94 at 7). This is incorrect.[7] Moreover, this distinction between types of statutes is not relevant to the Magistrate Judge's determination of whether A. Duarte is entitled to procedural due process, but rather, on

---

[7] The Magistrate Judge specifically stated, "[t]his [analysis] applies regardless of whether the statutory scheme involves a sex offender registration statute or a sex offender residency restriction ordinance" (Dkt. #91 at 38). Moreover, throughout the Magistrate Judge's report and recommendation, the Magistrate Judge noted whether each case relied upon involved a sex offender registration and/or residency statute.

whether A. Duarte has established a liberty interest meriting constitutional protection. Plaintiff's objection that the Magistrate Judge ignored the distinction between statutes or relied on inapplicable law is overruled.

### D. *The Magistrate Judge Correctly Found that* **Moore** *Does Not Apply*

A. Duarte also objects to the Magistrate Judge's finding that *Moore v. City of East Cleveland*, 431 U.S. 494 (1977), another case heavily relied on by Plaintiff, is inapposite to the present case (Dkt. #94 at 7-8). A. Duarte cites *Moore* for the proposition that the Ordinance is unconstitutional because it "not only 'regulates,' but actually forbids Plaintiff A. Duarte from residing, either alone or with the Family Plaintiffs, 'in a certain location.'" *Id*. However, the Court agrees with the Magistrate Judge that *Moore* is distinguishable from the present case. First, the liberty interests asserted here versus those asserted in *Moore* are vastly different. In *Moore*, the ordinance in question "selects certain categories of relatives who may live together and declares that others may not… [and] makes a crime of a grandmother's choice to live with her grandson." 431 U.S. at 499. There, the Supreme Court asserted that "freedom of personal choice in matters of marriage and family life is one of the liberties protected by the Due Process Clause," and that a number of cases "have consistently acknowledged a "private realm of family life which the state cannot enter." *Id*. A. Duarte's asserted liberty interest here does not implicate the private realm of family life, or "slice[] deeply into the family itself." *Id*. at 498. Moreover, *Moore* considered substantive due process, instead of procedural, which A. Duarte explicitly denies he is asserting here. *Id*. at 503. Accordingly, *Moore* does not apply, and Plaintiff's objection is overruled.

### E.  The Magistrate Judge Did Not Rely on A. Duarte's "Moderate" Risk Level

A. Duarte again objects that the Magistrate Judge erroneously relied on the assignment of a "moderate" risk level to A. Duarte when finding that A. Duarte's procedural due process claim be dismissed (Dkt. #94 at 9). Contrary to A. Duarte's assertion, the Magistrate Judge did not rely on A. Duarte's risk level in making its procedural due process finding, and Plaintiff's objection is overruled.

### III.  *Procedural Due Process (Duarte Family)*

The Duarte Family contends that they hold a constitutionally protected liberty interest in residing together as a family with A. Duarte within the areas in which A. Duarte is prohibited by the Ordinance from residing, i.e., within the buffer zone (Dkt. #94 at 3). The Duarte Family further argues that before they can be deprived of this constitutionally protected liberty interest, they must be afforded procedural due process. *Id.* The Magistrate Judge fully addressed the Duarte Family's claims, finding that the Duarte Family failed to identify what procedure was due, lacking, and/or inadequate (Dkt. #91 at 38-40). It is important to note that the Duarte Family members are not convicted child sex offenders, are not required to register on the Database, and are not prohibited from doing anything by the Ordinance.[8] *Id.*

The Magistrate Judge further found that the Duarte Family does not have a fundamental right and/or liberty interest in residing wherever they want, including within the buffer zone (Dkt. #91 at 39). As discussed *supra*, the Magistrate Judge's finding is bolstered by the recent Supreme Court decision in *Din*, in which the Supreme Court stated "[t]here is a simple distinction between government action that directly affects a citizen's legal rights, or imposes a

---

[8] The Magistrate Judge also found, and the Duarte Family does not object, that there is no evidence that S.D. or B.D. were deprived of "parental consortium" or a "custodial, caring, and nurturing relationship" with A. Duarte (Dkt. #91 at 39). The Magistrate Judge found that the Duartes describe themselves as very close, and state that their relationship has not been affected by this lawsuit or the Ordinance (Dkt. #70, Ex. 13 (2015 deposition) at 28:11-25, 28:16-17; Ex. 6 (2015 deposition) at 7:21-23, 8:3-17; Ex. 14 at 10:9-18, 14:2-11; Ex. 15 at 9:19-22, 10:1-14).

direct restraint on his liberty, and action that is directed against a third party and affects the citizen only indirectly or incidentally." 135 S. Ct. at 2138. The Supreme Court further found that there is no such constitutional right to live in the United States with a spouse. *Id*. Again, the first question that the Court must answer is whether the Ordinance deprives the Duarte Family of "life, liberty, or property," and, after considering the arguments of the Duarte Family, that answer is "no." *Id*. at 3132. The Ordinance does not affect the Duarte Family's legal rights, and does not impose a restraint on their liberties. The Ordinance affects the Duarte Family only incidentally. Accordingly, the Duarte Family's objection to the Magistrate Judge's finding regarding procedural due process is overruled.

## IV.     *Conclusion*

Having considered each of Plaintiffs' timely filed objections (Dkt. #94), and having conducted a de novo review, the Court is of the opinion that the findings and conclusions of the Magistrate Judge are correct and adopts the Magistrate Judge's report (Dkt. #91) as the findings and conclusions of the Court.

Accordingly, it is **ORDERED** that Defendant's Motion for Summary Judgment and Brief in Support (Dkt. #70) is **GRANTED.** Plaintiff A. Duarte's claims for violations of (1) the Ex Post Facto Clause of Article 1, Section 10 to the United States Constitution; (2) the Double Jeopardy Clause of the Fifth Amendment; (3) the Equal Protection Clause of the Fourteenth Amendment; (4) his civil rights under 42 U.S.C. § 1983; and (5) the Due Process Clause of the Fourteenth Amendment are dismissed with prejudice. The Duarte Family's procedural due process claim and all Plaintiffs' claims for declaratory judgment and injunctive relief are likewise dismissed with prejudice.

All relief not previously granted is **DENIED**, including specifically Defendant's Motion to Exclude Plaintiffs' Designated Expert Phillip David Taylor (Dkt. #90).

**IT IS SO ORDERED.**

**SIGNED this 28th day of September, 2015.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE